AARON D. FORD
Attorney General
EMILY D. ESPINOSA (Bar No. 16853)
Deputy Attorney General
Office of the Nevada Attorney General
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1195 (phone)
(775) 684-1108 (fax)
edespinosa@ag.nv.gov

*Attorneys for the State of Nevada*
*ex rel. Nevada Secretary of State*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BRAD LEE BARNHILL,

Plaintiff,

vs.

FRANCISCO V. AGUILAR, in his official capacity as NEVADA SECRETARY OF STATE,

Defendant.

Case No. 2:26-cv-02818-JAD-MDC

**NEVADA SECREATARY OF STATE'S MOTION TO DISMISS**

Defendant Francisco v. Aguilar, in his official capacity as Nevada Secretary of State ("Secretary"), moves to dismiss Plaintiff Brad Lee Barnhill's ("Plaintiff" or "Barnhill") Complaint for Declaratory and Injunctive Relief. ECF 2.

## I. INTRODUCTION

Plaintiff Barnhill seeks to transform a disagreement over election-administration procedures into a claim under the National Voter Registration Act ("NVRA"). According to the Complaint, Plaintiff independently analyzed publicly available voter-registration data, identified approximately 12,466 purportedly duplicate voter-registration records, and requested that the Secretary conduct an investigation related to those records. When the Secretary declined to undertake the investigation, Plaintiff filed this action alleging that the Secretary violated Section 8 of the NVRA.

. . .

But the NVRA imposes no such duty. Section 8 requires states to maintain a general program that makes a reasonable effort to remove voters who become ineligible because of death or a change of residence; it does not require election officials to investigate every allegation submitted by a private citizen or conduct audits based on a private party's independent database analysis. 52 U.S.C. § 20507(a)(4). Nor does Plaintiff plausibly allege that Nevada's voter-list maintenance program violates the NVRA. Plaintiff expressly disclaimed any wrongdoing, identified no voter whom he contends is ineligible, and alleged only that certain records appeared anomalous and warranted further review. Because Plaintiff seeks to enforce obligations that do not appear in the statute and fails to plausibly allege a violation of Section 8, the Complaint should be dismissed pursuant to Rule 12(b)(6).

## II. BACKGROUND

### A. Plaintiff's May 20, 2026, Submission.

On May 20, 2026, Plaintiff Barnhill submitted a letter and affidavit to the Secretary concerning what he characterized as an "Re: Affidavit of Complaint Regarding Apparent Voter Registration Irregularities in Clark County." *See generally* Affidavit of Complaint Regarding Apparent Voter Registration Irregularities in Clark County, attached here as Exhibit A. In his letter, Plaintiff stated that he had independently analyzed voter-registration data downloaded from the Secretary's website and identified approximately 12,466 apparent duplicate registration records in Clark County. *See id.*, *and see* Affidavit of Complaint Regarding Apparent Voter Registration, attached here as Exhibit B.

Plaintiff represented that he relied on his education and professional experience in computer science and database analysis to review voter-registration records containing information such as voter names, birth years, residential addresses, registration numbers, and voting-history data. *See* Exhibit A. According to Plaintiff, his analysis identified records sharing first names, last names, and birth years but associated with different voter-registration numbers and residential addresses. *See* Exhibit B.

Plaintiff expressly stated that he was not alleging criminal conduct or wrongdoing by any voter. *See* Exhibit B. Rather, he asserted that the records reflected possible

"duplicate registrations, incomplete record reconciliation, administrative error, or other systemic data integrity issues" that, in his view, warranted further review by election officials. *Id.* Based on those findings, Plaintiff requested that the Secretary conduct a "full audit and reconciliation" of the affected records and implement any corrective measures deemed necessary. *Id.*

**B. Nevada's Statutory Voter-Challenge Procedures.**

Nevada law provides specific procedures for challenging voter registrations. Under NRS 293.535 and NRS 293.547, challenges generally must be directed toward identified voters submitted to the appropriate county clerk and supported by personal knowledge concerning the facts underlying the challenge. Nevada regulations similarly define "personal knowledge" as firsthand knowledge acquired through observation or experience. *See* NAC 293.415(5) and NAC 293.416(3).

The statutory challenge procedures serve important functions under both Nevada law and the NVRA. As the Secretary explained to Plaintiff, those procedures help ensure that challenges are supported by individualized factual allegations and are processed in a manner consistent with the NVRA's requirements that list-maintenance activities be conducted uniformly and in a nondiscriminatory manner. *See* June 4 Secretary of State Closure Letter, attached here as Exhibit C.

**C. The Secretary's Response.**

On May 29, 2026, the Secretary of State's Office responded to Plaintiff's submission. The response acknowledged Plaintiff's allegation that Clark County contained approximately 12,466 apparent duplicate registration records and explained why the submission did not constitute a voter challenge under Nevada law. *See* Exhibit C.

Specifically, the Secretary explained that Nevada's voter-challenge statutes require challenges to be filed with a county clerk and supported by personal knowledge. *See* Exhibit C. The Secretary further explained that Plaintiff's allegations were based on third-party voter-registration data rather than personal knowledge regarding the residency or eligibility of any voter. *Id.* As a result, the Secretary informed Plaintiff that the Office

would not take action on Election Integrity Violation Reports asserting duplicate registrations based solely upon database analysis. *Id.*

The Secretary also advised Plaintiff that Nevada conducts routine voter-list-maintenance activities pursuant to state and federal law and that county clerks possess statutory authority and responsibilities regarding the correction and maintenance of voter-registration records. *Id.* After determining that Plaintiff's submission did not allege a statutory violation and did not satisfy Nevada's voter-challenge procedures, the Secretary closed the file without taking further action. *Id.*

### D. This Litigation

Following receipt of the Secretary's response, Plaintiff filed the present action. As this Court has already observed, Plaintiff's claim presents the narrower issue of whether the Secretary's rejection of Plaintiff's request for an investigation violates the NVRA. ECF 2. Plaintiff now seeks declaratory and injunctive relief compelling the Secretary to investigate the records identified in Plaintiff's database analysis and undertake additional remedial measures. *Id.*

## III. STANDARD OF LAW

### A. The NVRA

Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort" to remove voters who become ineligible because of death or a change of residence. 52 U.S.C. § 20507(a)(4). The statute balances list-maintenance obligations with protections against improper removal of eligible voters. *See* 52 U.S.C. § 20507(b).

While the NVRA requires reasonable list-maintenance efforts, Congress did not require perfect voter rolls. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624 (6th Cir. 2025). ("[T]he NVRA requires a reasonable effort, not a perfect effort."); *Am. Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 181–82 (3d Cir. 2017) (Section 8 requires a reasonable effort through a general program).

. . .

. . .

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is plausible only when the pleaded facts permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* at 678.

Where there is an "obvious alternative explanation" for the alleged conduct, a complaint may fail to cross "the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

## IV. ARGUMENT

### A. Plaintiff Fails to State a Claim Because the NVRA does not Require the Secretary to Investigate Plaintiff's Submission.

Section 8 of the NVRA requires states to "conduct a general program that makes a reasonable effort" to remove registrants who become ineligible due to death or a change of residence. 52 U.S.C. § 20507(a)(4). The statute prescribes substantive requirements governing statewide voter-list maintenance, but it does not require a state election official to initiate an investigation whenever a private citizen submits information that the citizen believes warrants further review.

Plaintiff's Complaint depends entirely on the existence of such a duty. According to the Complaint, Plaintiff downloaded publicly available voter-registration data, performed his own database analysis, identified what he believed to be approximately 12,466 apparent duplicate registrations, and requested that the Secretary of State conduct a "full audit and reconciliation" of those records. ECF 2 at 4–7. Plaintiff alleges that the Secretary violated the NVRA by declining to undertake such an investigation. ECF 2 at 7–8.

The defect in Plaintiff's theory is straightforward: neither the Complaint nor the NVRA identifies any statutory provision imposing such an obligation on the Secretary. The NVRA requires states to maintain a reasonable voter-list maintenance program. 52 U.S.C. § 20507(a)(4). It does not require election officials to investigate every allegation submitted by private parties, adopt every methodology proposed by private citizens, or conduct audits whenever a voter claims to have identified anomalous records.

Indeed, the documents referenced by Plaintiff in the Complaint demonstrate that Plaintiff was informed that Nevada law already provides a mechanism for challenging voter registrations. ECF 2 at 4–7. In its May 29, 2026, response, the Secretary's Office explained that Nevada's voter-challenge statutes require challenges to be directed toward identified voters, filed with the appropriate county election official, and supported by personal knowledge. *See* Exhibit C. The Office further explained that Plaintiff's submission relief on third-party voter-registration data rather than personal knowledge concerning any individual voter's eligibility or residency and therefore did not constitute a voter challenge under Nevada law. *Id.*

Nothing in the NVRA requires the Secretary to disregard those statutory procedures and instead launch an investigation whenever a private citizen submits a spreadsheet or data analysis. To the contrary, Section 8 reflects Congress's intent that voter-list-maintenance activities occur through uniform and orderly procedures that balance list accuracy with protections against the improper removal of eligible voters. *See* 52 U.S.C. § 20507(b). The Secretary's adherence to Nevada's established voter-challenge procedures is fully consistent with that framework.

Notably, Plaintiff's own submission to the Secretary's office did not identify any voter whom he claimed was ineligible to vote. Plaintiff expressly disclaimed any allegation of criminal conduct or wrongdoing and instead characterized his findings as "apparent" duplicate registrations, possible "administrative error," "incomplete record reconciliation," or other data-integrity concerns warranting further review. Exhibit B. At most, Plaintiff requested that election officials investigate whether further action might be appropriate.

But a request for investigation is not a statutory right, and the denial of such a request is not itself a violation of the NVRA. Because Plaintiff's claim rests upon a duty that does not appear anywhere in the text of the statute, the Complaint fails to state a claim and should be dismissed.

**B. Plaintiff Fails to Plausibly Allege that Nevada's Voter-List-Maintenance Program Violates the NVRA.**

Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort" to remove registrants who have become ineligible because of death or a change of residence. 52 U.S.C. § 20507(a)(4). The statutory inquiry here therefore focuses on the adequacy of the State's voter-list maintenance program, not whether a plaintiff can identify records that he believes warrant additional review.

Courts interpreting Section 8 have recognized that the NVRA requires reasonable efforts, not perfect voter-registration rolls. *See Judicial Watch, Inc.*, 524 F. Supp. 3d at 389–90 ("The NVRA requires a reasonable effort, not a perfect effort."). The existence of records that may merit further examination does not, standing alone, establish that a state has failed to satisfy its statutory obligations.

According to Plaintiff's May 20, 2026, correspondence and accompanying affidavit, he reviewed publicly available voter-registration data and identified approximately 12,466 records that matched on first name, last name, and birth year while reflecting different voter-registration numbers or residential addresses. *See* Exhibit A. Plaintiff characterizes these records as "apparent duplicate registration records" and "apparent anomalies and inconsistencies" that, in his opinion, warrant further review. *See* Exhibit B.

But identifying records that appear unusual is not the same as plausibly alleging that Nevada lacks a reasonable list-maintenance program. Plaintiff's own affidavit repeatedly stops short of alleging that the identified records are actually invalid. *See generally* Exhibit A, *and* Exhibit B. Instead, Plaintiff expressly states that he makes "no determination or allegation regarding intent, criminal conduct, or wrongdoing by any individual voter." Exhibit B. He further acknowledges that the patterns he identified "may

reflect" duplicate registrations, incomplete record reconciliation, administrative error, or other data-integrity issues. Exhibit B.

Such allegations alone do not establish that any particular registration is unlawful. Nor do they support a reasonable inference that Nevada's statewide voter-list maintenance system violates federal law. At most, Plaintiff alleges that his analysis identified records that he believes deserve additional review. The NVRA, however, does not impose liability whenever a private citizen identifies data that could potentially be investigated further.

Plaintiff's Complaint is particularly deficient because it contains virtually no factual allegations regarding Nevada's actual voter-list-maintenance program. Plaintiff does not allege facts concerning the State's systematic procedures for maintaining voter-registration records, coordinating with county election officials, processing voter removals, reviewing address changes, or otherwise complying with Section 8 of the NVRA. Instead, Plaintiff seeks to infer a statewide statutory violation solely from the existence of records he believes are anomalous. *See generally* ECF 2. As such, Plaintiff's allegations do not plausibly establish that Nevada's voter-list maintenance program is unreasonable. They establish only that Plaintiff reviewed voter-registration data, identified records that he believed warranted additional examination, and disagreed with the Secretary's decision not to conduct the investigation Plaintiff requested.

Accordingly, the Complaint fails to state a claim and should be dismissed.

**C. Plaintiff Fails to Allege that any Identified Voter is Ineligible.**

Even if Plaintiff's allegations are accepted as true, the Complaint fails to plausibly allege the fundamental predicate for a violation of Section 8 of the NVRA: the existence of voters who are ineligible and whose names have not been properly maintained on the voter-registration rolls.

Section 8 requires states to conduct a general program that makes a reasonable effort to remove the names of registrants who have become ineligible because of death or a change of residence. 52 U.S.C. § 20507(a)(4). Thus, the statutory focus is voter eligibility. To state a claim under Section 8, Plaintiff must plausibly allege facts supporting an

inference that Nevada failed to address registrations of voters who were ineligible to remain registered. The Complaint contains no such allegations.

In Plaintiff's submission to the Secretary's Office, he does not allege that any identified voter is deceased. He does not allege that any identified voter lacks voting qualifications under Nevada law. And he does not allege that any identified voter was improperly retained on the rolls after becoming ineligible. Instead, Plaintiff alleges only that certain records *appear* anomalous and therefore *may* warrant further review. Exhibit B.

These allegations fall short of the plausibility standard required by *Twombly* and *Iqbal*. A complaint does not state a claim by identifying data that may warrant additional investigation and then asking the Court to speculate about what such an investigation might uncover. Yet that is precisely what Plaintiff asks the Court to do here. The Complaint assumes that similarities in names, birth years, registration numbers, and addresses demonstrate the existence of ineligible voters, but Plaintiff alleges no facts eliminating other obvious explanations, including record updates, administrative processing issues, or other lawful circumstances reflected in election databases.

Most tellingly, Plaintiff's initial submission to the Secretary's Office did not ask to remove any identified voter from the rolls. Instead, Plaintiff requested that state officials investigate whether additional action might be warranted. Exhibit B ("I respectfully request that the appropriate authority review these findings, conduct any necessary audit or reconciliation of voter registration and ballot records, and determine whether any corrective administrative or legal action is warranted.") That request itself demonstrates the speculative nature of Plaintiff's allegations. Rather than identifying known ineligible voters, he identified records he believed deserved further inquiry.

The NVRA does not impose liability based on the possibility that additional investigation could reveal an issue. Because Plaintiff has failed to allege facts plausibly showing that any identified voter is ineligible, the Complaint fails to state a claim, and must be dismissed.

. . .

## V. CONCLUSION

Because the NVRA does not require the Secretary to investigate Plaintiff's submission, and because Plaintiff fails to plausibly allege that Nevada's voter-list maintenance program violates Section 8 of the NVRA or that any identified voter is ineligible, the Complaint fails to state a claim upon which relief can be granted. Accordingly, Defendant Secretary of State respectfully requests that the Court dismiss Plaintiff's Complaint.

RESPECTFULLY submitted this 19th day of November 2026.

AARON D. FORD
Attorney General

By: /s/ *Emily D. Espinosa*
EMILY D. ESPINOSA (Bar No. 16853)
Deputy Attorney General

*Attorneys for the State of Nevada*
*ex rel. Nevada Secretary of State*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on November 19, 2026, I filed the foregoing ***Nevada Secretary of State's Motion to Dismiss*** via this Court's electronic filing system. Parties that are registered with this Court's EFS will be served electronically.

/s/ *Mark Cryer*
AG Legal Secretary

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | BATES NO. |
|---|---|---|
| A. | 26-5-20 Election Complaint Part 1 | SOS 001 |
| B. | 26-5-20 Election Complaint Part 2 | SOS 002 - SOS 003 |
| C. | 26-6-4 Complainant Closure Letter | SOS 004 - SOS 011 |
| D. | Complainant's Supplemental Information – Duplicate Voters | SOS 012 - SOS 200 |