Brad Lee Barnhill
8104 Defiance Avenue
Las Vegas, Nevada 89129
tel: 702.613.2576
e: brad.lee.barnhill@pm.me
Plaintiff, *in propria persona, sui juris*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Brad Lee Barnhill,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO V. AGUILAR, in his official capacity as Secretary of State of Nevada,<br><br>Defendant. | Case No. 2:26-cv-02818-JAD-MDC<br><br>**PLAINTIFF'S OPPOSITION TO NEVADA SECREATARY (sic) OF STATE'S MOTION TO DISMISS (ECF NO. 20)** |

Plaintiff Brad Lee Barnhill, appearing *in propria persona*, opposes the Motion to Dismiss filed by Defendant Francisco V. Aguilar, in his official capacity as Nevada Secretary of State (ECF No. 20), and its Appendix of Exhibits (ECF No. 21). This opposition is based on the following Memorandum of Pointss and Authorities, the pleadings and papers on file, and any argument the Court may allow.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Secretary's motion argues against a complaint Plaintiff did not file. It recasts this case as a demand that the Secretary "investigate every allegation submitted by a private citizen." ECF No. 20 at 2. Plaintiff claims no such right. His claim is the one this Court has already identified: that the Secretary's refusal to act on Plaintiff's showing of thousands of apparent duplicate registrations, on the ground that the showing was not based on "individualized, personal knowledge," violates the National Voter Registration Act's mandate that the State

conduct a general program that makes a reasonable effort to remove the names of ineligible voters. ECF No. 17 at 3 (citing 52 U.S.C. § 20507(a)(4)).

That is a claim about the State's list-maintenance program, and the Complaint pleads it with specific facts. Using the Secretary's own published data, Plaintiff identified 9,607 individuals in Clark County, matched on first name, last name, and birth year, who are each associated with two or more active voter registrations at different residential addresses, for a total of 12,465 matched registration pairs. ECF No. 2 ¶¶ 21, 37. He gave the Secretary a sworn written report of those findings and then a formal pre-suit notice under 52 U.S.C. § 20510(b). *Id*. ¶¶ 3, 6, 24, 27, 32. The Secretary did not dispute the data, did not check it, and did not refer it to the Clark County Clerk. Instead, he announced a categorical policy that his office "will not be taking action" on reports of duplicate registrations that are "based on third-party data and not personal knowledge," and closed the file. *Id*. ¶¶ 4–5, 28–29; ECF No. 21 at SOS 004.

Accepting those allegations as true and construing them in Plaintiff's favor, as the Court must at this stage, the Complaint plausibly alleges that a program which refuses as a matter of policy to examine data-driven evidence of thousands of simultaneously active duplicate registrations, and which relies instead on a private challenge process that by statute can reach only one named voter at a time, is not a "reasonable effort" under Section 8. Whether the Secretary's program is in fact reasonable is a question for a developed record, not a motion to dismiss. The motion should be denied. In the alternative, Plaintiff requests leave to amend.

## II. STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

On a motion under Rule 12(b)(6), the facts are those alleged in the Complaint. They are as follows.

On or about January 26, 2026, Plaintiff downloaded Nevada voter registration data from the Secretary's public data-download portal. ECF No. 2 ¶ 19. Plaintiff, who holds a degree in computer science and has decades of experience in database analysis and data integrity, analyzed the Clark County dataset, including the fields for first name, last name, birth year, residential address, registration number, and recorded participation in the 2024 General Election. *Id*. ¶¶ 18, 20.

The analysis identified 9,607 distinct individuals, matched on first name, last name, and birth year, each associated with more than one active voter registration number, for a total of 12,465 matched registration pairs. *Id.* ¶ 21. Of these individuals, 8,614 held two registration numbers, 795 held three, 153 held four, 33 held five, 8 held six, 2 held seven, and 2 held eight. *Id.* Every matched pair reflects two distinct registration numbers, two distinct residential addresses, and recorded participation in the 2024 General Election under both registration numbers. *Id.* ¶¶ 2, 21, 37.

On May 20, 2026, Plaintiff submitted a sworn Affidavit of Complaint documenting these findings to the Secretary's Elections Division and asked for review, audit, and reconciliation of the affected entries. *Id.* ¶ 24. The Secretary's office opened File No. C26-69 SOS and assigned an investigator. *Id.* ¶ 25. On June 3, 2026, Plaintiff sent the Secretary formal written notice of the violation under the NVRA. *Id.* ¶¶ 3, 27, 32.

On June 4, 2026, the Secretary's office closed the file. *Id.* ¶¶ 4, 28. It stated that the office "will not be taking action on EIVRs that indicate, based on third-party data and not personal knowledge, regarding the existence of a duplicate voter registration," and directed Plaintiff to the individualized written-challenge procedures of NRS 293.535 and NRS 293.547, which require a challenge based on the challenger's personal knowledge and filed with a county clerk. *Id.* ¶¶ 4, 28. The letter did not dispute the accuracy of Plaintiff's analysis, did not identify any audit, reconciliation, or verification of the flagged entries, and did not identify any coordination with the Clark County Clerk about them. *Id.* ¶¶ 5, 29. As of the filing of the Complaint, more than ninety days after notice, the Secretary had taken no action to investigate, audit, or reconcile the flagged entries. *Id.* ¶¶ 31, 33, 38.

Plaintiff seeks a declaration that the Secretary is violating Section 8(a)(4) and an injunction requiring the Secretary to (i) conduct or direct a good-faith audit and reconciliation of the flagged entries, in coordination with the Clark County Clerk as necessary; (ii) report the results; and (iii) "implement a documented, reasonable general program for identifying and resolving apparent duplicate registrations statewide going forward." *Id.* at 8–9.

## III. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) (quoting ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement.'" *Id*. The Court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. ***Usher v. City of Los Angeles***, 828 F.2d 556, 561 (9th Cir. 1987).

When the defendant offers an alternative explanation for the facts alleged, the complaint survives so long as the plaintiff's explanation is also plausible. ***Starr v. Baca***, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."). Dismissal is "especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." ***McGary v. City of Portland***, 386 F.3d 1259, 1270 (9th Cir. 2004) (citation omitted).

A pro se complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." ***Erickson v. Pardus***, 551 U.S. 89, 94 (2007) (citation omitted); ***Hebbe v. Pliler***, 627 F.3d 338, 342 (9th Cir. 2010) (courts continue to construe pro se filings liberally after *Iqbal*).

The Court may consider documents incorporated by reference into a complaint, but "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." ***Khoja v. Orexigen Therapeutics, Inc.***, 899 F.3d 988, 1003 (9th Cir. 2018). Nor may the Court take judicial notice of disputed facts in a defendant's documents. ***Lee v. City of Los Angeles***, 250 F.3d 668, 689–90 (9th Cir. 2001).

## IV. ARGUMENT

### *A. The Complaint Challenges the Reasonableness of the State's Program, Not the Denial of a Private "Right to an Investigation."*

The Secretary's first argument depends on reframing the claim. The motion says the Complaint "depends entirely" on a duty to "initiate an investigation whenever a private citizen

submits information," and that "a request for investigation is not a statutory right." ECF No. 20 at 5, 7. Plaintiff agrees that the NVRA does not give every citizen a right to an investigation on demand. That is not his claim.

Section 8(a)(4) requires each State to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). One of the NVRA's stated purposes is "to ensure that accurate and current voter registration rolls are maintained." *Id.* § 20501(b)(4). The Secretary is the official responsible for coordinating the State's responsibilities under the Act. *Id.* § 20509; NRS 293.124. Any "person who is aggrieved by a violation" of the Act may sue for declaratory and injunctive relief after giving notice. 52 U.S.C. § 20510(b). The Secretary does not dispute that Plaintiff gave the required notice.

The Complaint alleges that the Secretary's program fails the "reasonable effort" standard, and it alleges how: when presented with specific, data-driven evidence, drawn from the State's own records, that thousands of individuals hold multiple simultaneously active registrations at different addresses, the Secretary's office did nothing, because its policy is to take no action on any report of duplicate registrations that is "based on third-party data and not personal knowledge." ECF No. 2 ¶¶ 4–5, 28–31, 39–40. The Complaint alleges that this position "is inconsistent with Defendant's statutory duty under 52 U.S.C. § 20507(a)(4) to conduct a general program of reasonable list maintenance, a duty that exists independently of, and in addition to, the individualized challenge mechanisms found in NRS 293.535 and 293.547." *Id.* ¶ 39. And the relief sought includes an order requiring "a documented, reasonable general program for identifying and resolving apparent duplicate registrations statewide going forward." *Id.* at 9. That is a challenge to the general program itself.

This Court has already read the Complaint that way. In denying the Secretary's motion to stay, the Court explained that Plaintiff "contends that the Secretary's failure to investigate his claims because they were not based on 'individualized, personal knowledge' violates the NVRA's mandate to make a reasonable effort to remove ineligible voters," and that the question

presented is "whether the Secretary's rejection of Barnhill's request for an investigation violates the statute." ECF No. 17 at 3. The motion quotes that framing but attributes it to the Complaint, ECF No. 20 at 4:10–14 (citing "ECF 2"), and then argues that the question has an obvious answer because no statute creates a right to an investigation. But the Court framed the question under Section 8(a)(4). The issue is not whether Plaintiff had a freestanding right to be heard. It is whether a program that categorically refuses to examine this kind of evidence is a reasonable effort.

How a program responds to credible information about outdated or duplicate registrations is part of what makes it reasonable or unreasonable. A "reasonable effort" is a standard of conduct, and it is measured against the information the State actually has. A program that has been told, with supporting data drawn from its own database, that roughly 9,600 people in a single county appear to hold multiple active registrations, and that responds by declining to look, has plausibly not made a reasonable effort to keep its rolls "accurate and current." 52 U.S.C. § 20501(b)(4). Plaintiff does not contend that the Secretary must adopt "every methodology proposed by private citizens." ECF No. 20 at 6. He contends that a program that will not examine the data at all, from any source, unless a private citizen brings an individual challenge based on personal knowledge, is not reasonable.

Federal law independently requires the Secretary to address duplicate records. The Help America Vote Act requires the chief State election official to implement a single, uniform, centralized, computerized statewide voter registration list, 52 U.S.C. § 21083(a)(1)(A); requires that list maintenance be performed on that list "on a regular basis," *id.* § 21083(a)(2)(A); and requires that it be conducted "in a manner that ensures that . . . duplicate names are eliminated from the computerized list," *Id.* § 21083(a)(2)(B)(iii). HAVA further directs that any removal from that list be made "in accordance with the provisions of the National Voter Registration Act." *Id.* § 21083(a)(2)(A)(i). Congress thus imposed on the Secretary a mandatory duty to eliminate duplicate registrations, in addition to the general duty of Section 8, and directed that the duty be carried out through Section 8's procedures. Plaintiff does not bring a separate claim under HAVA, which is enforced through a civil action by the Attorney General and a state

administrative complaint procedure. *See* ***Bellitto v. Snipes***, 935 F.3d 1192, 1202 (11th Cir. 2019); 52 U.S.C. §§ 21111, 21112. His claim arises under Section 8, for which Congress provided a private right of action. *Id.* § 20510(b). But in deciding what a "reasonable effort" under Section 8 requires, the Court need not set aside the fact that Congress, in the statute governing the very list at issue, required that duplicate names be eliminated from it. HAVA's requirements are minimum requirements, *Id.* § 21084, and Nevada has implemented this one through the Secretary's own daily duplicate check, NAC 293.462(1), discussed below. A Section 8 program that refuses as a matter of policy to examine evidence of thousands of duplicate registrations on the list HAVA requires the Secretary to keep free of duplicates is, at a minimum, plausibly not a reasonable effort.

### *B. Nevada's Individual-Challenge Statutes Cannot Substitute for the State's Own Program.*

The Secretary argues that he properly directed Plaintiff to Nevada's voter-challenge procedures, NRS 293.535 and NRS 293.547, and that nothing in the NVRA requires him to "disregard those statutory procedures." ECF No. 20 at 6. This argument fails for three reasons.

First, the challenge statutes are a tool for private citizens. They are not the State's program, and the State cannot satisfy its own Section 8 obligation by pointing to a remedy available to individual voters. Section 8(a)(4) places the duty on the State. The Complaint alleges exactly this: the State's duty "exists independently of, and in addition to," the individual challenge mechanisms. ECF No. 2 ¶ 39.

Second, the challenge statutes by their terms cannot reach a problem of this kind. As reproduced in the Secretary's own appendix, a written challenge under NRS 293.547 may be filed only by a voter "registered to vote in the same precinct as the person whose right to vote is challenged," only if it is "based on the personal knowledge of the registered voter," only "[a]fter the 30th day but not later than the 25th day before any election," and it "must not contain the name of more than one person." NRS 293.547(1), (2), (4); ECF No. 21 at SOS 011. NRS 293.535, the other procedure the Secretary invoked, is narrower still. Its residence ground requires an affidavit, made on "personal knowledge," that the registrant has "[m]oved outside the boundaries of the county where he or she is registered" with the intention of abandoning

residence there, and has established residence in another county, state, territory, or foreign country. NRS 293.535(1)(b). It does not reach a person who appears on the rolls at two addresses within the same county. No single voter could ever bring challenges for 9,607 individuals spread across Clark County, and no one has personal knowledge of the residence of thousands of strangers.[1] A procedure that cannot, by design, address a county-wide database problem is not a reasonable means of addressing it. The Complaint alleges as much. ECF No. 2 ¶ 5 (the challenge process is "not designed for, and unsuited to, a systemic, data-driven finding of this scale").

Third, the Secretary's view would make the State's list maintenance depend on private citizens with personal knowledge. That reverses the structure of the NVRA, which assigns the duty of list maintenance to the State and permits the State to use systematic, data-based tools to carry it out. The NVRA itself expressly contemplates that a State may identify registrants who have moved by matching its rolls against outside data, such as change-of-address information from the Postal Service. 52 U.S.C. § 20507(c)(1). <u>**If the State may match its list against Postal Service data, it is at least plausible that a reasonable program would also check its list against itself**</u>. Nevada's own regulations already require exactly that: the Secretary must check the statewide list each business day to determine "whether any person is included as a registered voter in the statewide voter registration list more than once." NAC 293.462(1).

The Secretary's reliance on Section 8(b)'s requirement that list maintenance be "uniform" and "nondiscriminatory" does not change the analysis. ECF No. 20 at 3, 6; see 52 U.S.C. § 20507(b)(1). Plaintiff's analysis applied the same neutral matching criteria to every record in the Clark County dataset. ECF No. 2 ¶¶ 20–21. A matching process that is run across an entire list under the same criteria is the opposite of a targeted or discriminatory challenge. And Plaintiff does not ask the Court to order any voter removed without the NVRA's protections. Any registration found to be outdated would remain subject to the notice and waiting procedures of 52 U.S.C. § 20507(d), and changes of address within the same registrar's jurisdiction are to be corrected on the list rather than cancelled, *Id.* § 20507(f). Those

[1] The motion cites NAC 293.415(5) and NAC 293.416(3) for the definition of "personal knowledge." ECF No. 20 at 3:12. The Secretary's appendix reproduces only NAC 293.416, which defines the term in subsection 3 as "firsthand knowledge through experience or observation." ECF No. 21 at SOS 006.

safeguards are reasons to conduct list maintenance carefully. They are not reasons to decline to conduct it.

Finally, much of the Secretary's argument rests on assertions of fact that are not in the Complaint, such as the statements in his June 4 letter that "[r]outine list maintenance is conducted on a regular basis and results in significant inactivation and cancellation of voters' registrations." ECF No. 21 at SOS 004; see ECF No. 20 at 4. Even if the June 4 letter is incorporated by reference, the Court may not assume the truth of the Secretary's own statements in it to dispute the Complaint's well-pleaded allegations that no audit, reconciliation, verification, or coordination with the Clark County Clerk took place. *Khoja*, 899 F.3d at 1003; ECF No. 2 ¶¶ 29, 31. The Secretary may try to prove at a later stage that his program is reasonable. He cannot do so on a motion to dismiss.

### *C. The Complaint Plausibly Alleges That the State's Program Is Not a Reasonable Effort.*

The Secretary's second argument is that the Complaint "contains virtually no factual allegations regarding Nevada's actual voter-list-maintenance program." ECF No. 20 at 8. That is incorrect, and the standard the Secretary applies is too demanding for the pleading stage.

The Complaint alleges two kinds of facts that support a plausible inference that the State's program is not reasonable. The first is the outcome: in Clark County alone, 9,607 individuals appear on the active rolls under multiple registration numbers at different addresses, including individuals with as many as eight active registrations. ECF No. 2 ¶¶ 21, 37. The scale of an inaccuracy in a list is circumstantial evidence of whether the program that maintains the list is working. The second is the Secretary's policy, stated in his own letter: his office will not act on reports of duplicate registrations based on data rather than personal knowledge. *Id.* ¶¶ 4, 28. Taken together, those facts plausibly show a program that leaves thousands of apparent duplicates on the rolls and has chosen not to look for them.

Nevada's own regulations strengthen that inference. They provide that "[o]n each business day, the Secretary of State will check the contents of the statewide voter registration list by: 1. Determining whether any person is included as a registered voter in the statewide voter registration list more than once." NAC 293.462(1). The Secretary must "establish and

maintain a centralized, top-down database" of voter registration information for all Nevada counties and must use it "to create the official statewide voter registration list." NRS 293.675(1)–(2). That list must "[s]erve as the single method for storing and managing the official list of registered voters in this State," must "[c]ontain the name and registration information of every legally registered voter," and must "[b]e regularly maintained to ensure the integrity of the registration process and the election process." NRS 293.675(3)(b), (d), (i). Plaintiff does not contend that this regulation creates a federal claim of its own. His point is narrower. The Secretary is already required to look for the very kind of duplicate records Plaintiff identified, every business day, in the statewide list the Secretary maintains. Yet according to the Complaint, 9,607 individuals remained on the active rolls in Clark County under multiple registration numbers, and when Plaintiff brought those records to the Secretary's attention, the Secretary declined to examine them. ECF No. 2 ¶¶ 21, 28–31. How the daily checks operate, whether they detected these records, and what was done about them are questions of fact within the Secretary's knowledge. The persistence of thousands of apparent duplicates despite a required daily check supports a reasonable inference that the State's process for identifying and resolving duplicate registrations, as actually carried out, is not a reasonable effort.

The Secretary faults Plaintiff for not pleading the details of "the State's systematic procedures for maintaining voter-registration records, coordinating with county election officials, processing voter removals, [and] reviewing address changes." ECF No. 20 at 8. But those details are within the Secretary's own knowledge and control, and the NVRA's public-records provision exists precisely so that the public can later inspect them. 52 U.S.C. § 20507(i). A plaintiff is not required to plead facts that are peculiarly within the defendant's possession before discovery. See ***Soo Park v. Thompson***, 851 F.3d 910, 928 (9th Cir. 2017) (*Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant") (internal quotation marks and citation omitted). What Plaintiff could know from outside the

Secretary's office, he has alleged: the results visible in the State's own published data and the Secretary's stated refusal to examine them.

The Secretary is correct that Section 8(a)(4) does not require perfection. ECF No. 20 at 4, 7.[2] Plaintiff does not allege that the rolls must be perfect. But whether a particular program's efforts are reasonable is a fact-intensive question that is ordinarily resolved on an evidentiary record. See, e.g., ***Bellitto***, 935 F.3d 1192 (affirming judgment after bench trial on whether county's program was reasonable). One of the Secretary's authorities is cited only as "Judicial Watch, Inc., 524 F. Supp. 3d at 389–90," with no case name, court, or first page, and no full citation appears anywhere in the motion. ECF No. 20 at 7:13–14.[3] Plaintiff cannot respond to an authority he cannot identify. In any event, the proposition for which it is cited, that the NVRA does not require perfection, is not in dispute.

The motion also understates what the Complaint alleges. It describes Plaintiff's matches as records "reflecting different voter-registration numbers *or* residential addresses." ECF No. 20 at 7:19–20. The Complaint alleges both: every matched pair reflects two distinct registration numbers *and* two distinct residential addresses, *and* recorded 2024 General Election participation under both numbers. ECF No. 2 ¶ 21; see also ECF No. 21 at SOS 002 ¶ 6. The motion misdescribes the record in other respects as well.[4] These errors matter because the motion's arguments rest on its own account of Plaintiff's submissions rather than on the Complaint.

The Secretary also suggests that there may be an "obvious alternative explanation" for the duplicate records, such as "record updates, administrative processing issues, or other lawful

[2] The motion attributes this same quotation to two different authorities: to ***Pub. Int. Legal Found. v. Benson***, 136 F.4th 613, 624 (6th Cir. 2025), at page 4, and to the unidentified "Judicial Watch, Inc." decision at page 7. ECF No. 20 at 4, 7.

[3] Plaintiff believes the Secretary may intend ***Judicial Watch, Inc. v. Pennsylvania***, 524 F. Supp. 3d 399 (M.D. Pa. 2021). If so, that opinion begins at page 399, and a pin cite to pages 389–90 cannot refer to it. Plaintiff notes this only to explain why he cannot respond to the citation as given.

[4] The motion states that the Secretary's office responded "[o]n May 29, 2026." ECF No. 20 at 3:20; see also *Id.* at 6:9. The letter in the Secretary's own appendix is dated June 4, 2026, ECF No. 21 at SOS 004, and the motion itself refers to it as the "June 4 Secretary of State Closure Letter," ECF No. 20 at 3. The motion also attributes the phrase "full audit and reconciliation" to Plaintiff's affidavit (Exhibit B), ECF No. 20 at 3:3–5, and to the Complaint, *Id.* at 5:26 (citing "ECF 2 at 4–7"). The phrase appears in Plaintiff's May 20, 2026 cover letter (Exhibit A). ECF No. 21 at SOS 001. Similarly, the motion attributes the phrase "apparent duplicate registration records" to Exhibit B. ECF No. 20 at 7:21. The phrase appears in Exhibit A, ECF No. 21 at SOS 001, and in the Secretary's June 4 letter, *Id.* at SOS 004, but not in Exhibit B.

circumstances." ECF No. 20 at 5, 9.[5] But an "administrative processing issue" that leaves a person actively registered at two or more addresses at once is itself an inaccuracy in the list, and the Secretary's suggestion confirms rather than refutes that the list contains outdated entries. If the Secretary means that some of the matched records may belong to different people who share a name and birth year, that is a question of fact that the Secretary, who holds full dates of birth and other identifying data for every registrant, is far better positioned to answer than Plaintiff, and it is exactly the kind of question a reasonable program would ask. At most, the Secretary offers a competing explanation. Under *Starr*, when the plaintiff's explanation is also plausible, the complaint survives. 652 F.3d at 1216.

### *D. The Complaint Plausibly Alleges That the Rolls Contain Registrations Reflecting Unprocessed Changes of Residence.*

The Secretary's third argument is that the Complaint fails to allege "that any identified voter is ineligible." ECF No. 20 at 8. That argument overlooks what a duplicate registration at a different address means under Section 8.

Section 8(a)(4)(B) requires a reasonable effort to remove the names of registrants who have become ineligible "by reason of ... a change in the residence of the registrant," in accordance with Section 8's notice procedures. 52 U.S.C. § 20507(a)(4)(B), (d)(1). Section 8 also provides that when a registrant moves to another address "within the same registrar's jurisdiction, the registrar shall correct the voting registration list accordingly." *Id.* § 20507(f). Processing changes of residence, whether by correcting the list within the registrar's jurisdiction or by removal after notice, is thus part of what Section 8 requires.

When the same person appears on the active rolls under two registration numbers at two different residential addresses, the records support a reasonable inference that at least some of those registrations reflect changes of residence the State has not processed. Plaintiff need not establish at the pleading stage which address is current for any registrant, whether a particular move was within or outside the registrar's jurisdiction, or whether correction or removal is the right response for a given record. Those are the questions a reasonable program would answer. The Complaint alleges 12,465 such pairs. ECF No. 2 ¶¶ 21, 37. That is enough to plausibly

[5] The *Opposition* cites *Iqbal*, 556 U.S. at 678, for the phrase "obvious alternative explanation." ECF No. 20 at 5:11–13. That phrase appears in *Iqbal* at 682, quoting *Twombly*, 550 U.S. at 567.

allege that the rolls contain registrations Section 8 requires the State to address, without speculation about what an investigation might uncover.

Nor do Section 8's notice-and-waiting procedures explain the persistence of these records. Section 8 permits removal "at the request of the registrant." 52 U.S.C. § 20507(a)(3)(A). The Department of Justice, which enforces the Act, has explained that a registrant who submits a new application to register in a new jurisdiction and provides information about the prior registration on that application makes such a request, which the State may treat as a request to cancel or transfer the prior registration, and that a new registration at a new address within the same jurisdiction calls for updating the existing record rather than cancelling it. U.S. Dep't of Justice, Civil Rights Div., *NVRA List Maintenance Guidance* (Sept. 2024, updated Oct. 2026). A duplicate registration exists only because the registrant submitted a second application. Whether each second application included prior-registration information, and what the State did with it, are facts within the Secretary's records. It is at least plausible that many of the 12,465 matched pairs reflect registrations the State could have cancelled or updated at the registrant's own request, without the delay that Section 8(d) imposes on removals the State initiates on its own.

The Secretary leans heavily on the statement in Plaintiff's pre-suit affidavit that he made "no determination or allegation regarding intent, criminal conduct, or wrongdoing by any individual voter." ECF No. 20 at 7 (quoting ECF No. 21 at SOS 002). That statement disclaims an accusation of wrongdoing. It does not disclaim that the records are outdated. Most outdated registrations are the result of entirely innocent moves, and the NVRA's list-maintenance duty does not depend on any voter having done anything wrong. Plaintiff's restraint in not accusing his fellow citizens of crimes is not a concession that the rolls are accurate. And on a motion to dismiss, the operative allegations are those in the Complaint, not the Secretary's characterization of a letter written before suit. *Khoja*, 899 F.3d at 1003.

The Secretary also asserts that Plaintiff identified no voter "whom he contends is ineligible" and no voter "whom he claimed was ineligible to vote." ECF No. 20 at 2:7, 6:23. That assertion rests on the premise that a registrant who appears on the active rolls at two

different addresses presents no change-of-residence issue at all, which is incorrect for the reasons given above. It also understates how specific Plaintiff's submission was. Exhibit D to the Secretary's appendix, which the Secretary labels "Complainant's Supplemental Information – Duplicate Voters," lists matched registrants by first name, last name, and birth year, together with both registration numbers, both residential addresses, the registration status of each record, and the recorded 2024 General Election participation under each. ECF No. 21, Ex. D. The Secretary therefore had the names, registration numbers, and addresses of the records at issue, **<u>and chose not to examine them</u>**. If the Court considers the Secretary's exhibits at all, it should consider this one, which confirms the specificity of what the Secretary was given and declined to review.

***E. In the Alternative, Plaintiff Should Be Granted Leave to Amend.***

If the Court finds any part of the Complaint insufficient, Plaintiff respectfully requests leave to amend. Leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), and a district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." ***Lopez v. Smith***, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citation omitted); see also ***Eminence Capital, LLC v. Aspeon, Inc.***, 316 F.3d 1048, 1052 (9th Cir. 2003). This is Plaintiff's first complaint, and no amendment has been sought or denied.

Amendment would not be futile. If given leave, Plaintiff can allege additional facts, including: the specific registrant data provided to the Secretary, which the Secretary has now filed as Exhibit D; the Secretary's responsibility for establishing and maintaining the statewide voter registration list, NRS 293.675(1)–(3); the Secretary's regulatory duty to check that list each business day for persons registered more than once, NAC 293.462(1); the Secretary's stated policy of declining to act on data-driven reports of duplicate registrations as a category; and, on information and belief, facts about whether the State's duplicate checks detected or resolved the flagged records. Plaintiff will comply with LR 15-1 in seeking any amendment.

## V. CONCLUSION

The Complaint plausibly alleges that the Secretary's list-maintenance program, which refuses as a matter of policy to examine data-driven evidence that thousands of individuals hold

multiple active registrations at different addresses, is not a "general program that makes a reasonable effort" to remove the names of registrants who have become ineligible by reason of a change in residence. 52 U.S.C. § 20507(a)(4). Nor does it serve the NVRA's purpose of ensuring that "accurate and current voter registration rolls are maintained." *Id.* § 20501(b)(4). Plaintiff respectfully requests that the Court deny the Secretary's Motion to Dismiss (ECF No. 20). In the alternative, Plaintiff requests leave to file an amended complaint.

**CERTIFICATION**

I certify that artificial intelligence was used to generate a portion of this filing. I have reviewed the source material and verified that the artificially generated content in the filing is accurate and complies with the filing’s Rule 11 obligations.

Dated this 23rd day of November, 2026.

Respectfully submitted,

*/s/ Brad Lee Barnhill*

__________________________

Brad Lee Barnhill
Plaintiff, *in propria persona, sui juris*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of November, 2026, I electronically filed the foregoing ***PLAINTIFF'S OPPOSITION TO NEVADA SECREATARY (sic) OF STATE'S MOTION TO DISMISS (ECF NO. 20)*** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered participants, including:

Emily D. Espinosa, Deputy Attorney General, Office of the Nevada Attorney General, 100 North Carson Street, Carson City, NV 89701-4717, edespinosa@ag.nv.gov

/s/ Brad Lee Barnhill

Brad Lee Barnhill
Plaintiff, *in propria persona, sui juris*